Oh, yes. Oh, yes. Oh, yes. The Honorable Court District State of Illinois is now in session. Good morning. Um, let the record reflect this morning that Justice Chapman is not present. Um, although, as you know, these matters are being audio taped, so she will be available. They will be available for her to listen to. No disrespect to you all, but she's not here, but she couldn't be with us this morning. So first case on the docket is 5-15-0526 right in the city of Metropolis. And this can trail may proceed when you're ready. Good morning. The issue before the court today is whether the city of Metropolis owes a duty to the plaintiff under an intergovernmental agreement, a lease that it had property to Massac Memorial Hospital. Um, kind of get a history of this. The facts of this case. This is a building situated in Metropolis and two prior to the paramedics moving in. It was a house. So it has the old Bay doors on the building. After the fire department moved out, it was then the mayor and police are the Metropolis Police Department. And then sometime in 2000 and eight, the paramedics that were employed by Massac Memorial Hospital were housed in the facility. Approximately 20 teams. Over time, from 2008 until recent, the building became uninhabitable. These paramedics live, slept, ate in this building. They had issues with every time it rained. They had to physically push water out of the building and some of the sleeping quarters. The water came through the window sills. Um, did they ever seek to terminate police? Massac Memorial Hospital did not. Neither did the city. And even above in the sleeping quarters, the mold that was growing on the ceiling. The EMTs did everything they could to constantly housekeeping to clean the property. When it rained, they put fans up, tried to air the property. One part of the property was actually quarantined. There were only two restaurants. It's all that in the record about the movie on the ceilings and we're at a pleading stage here, and I take it there haven't been depositions and so forth. These were items that were discussed in court on the motions to show because the issue is the defendant is claiming housekeeping duty. Okay, something that the tenants failed to housekeep. Well, the issue is under the lease, the city had a duty to repair the property, and it was a failure to repair the property that caused the condition of property, not housekeeping. Okay, well, let me ask it this way. I mean, were there affidavits or anything filed describing the extent of this mold and what had been done and all these things you're just not talking about. So really, that's not part of the record. Other than arguing for gas, the city and one of the issues would be noticed that the city was notified of the problems with this building. One of the agents for the city actually spray painted some of the vent covers and did nothing else. So in fact, this building, since this lawsuit has been demolished, so it is no longer around. But that's not in the complaint. I mean, we're really here on the complaint, right? Right. And the complaint does talk about the hiding of the mold and the mildew and those kinds of things. Right, right. Yes. And I'll get to the law. The parties don't dispute what the law is. The general rule is that the landlord is not liable for any injury on the property because it gives possession to the tenant. There are exceptions to those. Okay. And we have a tendency, the two of us, to ask a lot of questions when we're together. But you say there's no dispute on the law. It seems to me that the judge dismissed this on a 2-615 issue, which means there's no set of circumstances that could possibly have been fled to allow you to go forward. What do you have to say about that? Well, and it was also on a 6-19. Well, you can't do both. Right. I'm going to ask the defense counsel about that. The motion was filed improperly. You understand that? Yes. They filed a combined motion, and they didn't set out separately what they were doing. So as I read the order, it was dismissed on a 2-615. Okay. And you disagree with that? Well, the court, if I have the docket sheet, it was in the docket sheet. You're right. It's in the docket sheet. Yes. Asked the defendant to file a revised motion stating which section, 6-15 or 6-19, they were moving. And it was in the alternative. And the court then dismissed it, I believe, on the 6-15 A, C, and D, as insufficient pleading. But those are just insufficient pleading. It's not like a 6-19. And, you know, it's been amended four times. And I believe every, it cites two specific portions of the lease, sections 9 and 7, where that duty arises. So it's really, the law is the general rule and the exceptions are what they are. But this is a fact-specific case. We have to look at the terms of this lease. Just to get back to the judge's order and make sure, you know, kind of where we start from here. I mean, Judge Williamson did say he dismissed it on 2-615 because he said no set of facts can be alleged that would allege a cause of action, a viable cause of action. And then went on to say no duty under 2-619 A-9. So, I mean, I kind of read it as the judge is saying, because there's no duty, no set of facts can be alleged. It's a little confusing. I mean, but it boils down to no duty. No duty. And that's what I, that's how I read the order. Right. He's saying that there's no duty under this lease, because really all the hearings we had was, was there a duty? And he kept questioning that. Under this lease, there is no duty. So I was somewhat confused, too, by how it was being dismissed with prejudice on the final. Although it was under 6-15, I think it was. There's no duty to go forward. Well, that's one of the problems when defendants don't file a motion for it. But, um, and I think you're going to be seeing our court speak to that issue. But, um, your allegation, as I understand it, is that under the lease, they created a duty because they had to maintain the walls, the air conditioning system, etcetera. And so how else would you will? Yes, you are. And it all boils down to, um, it's an exception to the duty issue. Yes. Yes. If by contract. So we agree the general duty. One of the exceptions is if the landlord contracts to make the repairs. And I think if you look at the lease, it's clearly sets for Section nine and seven is what I focused on. Nines. The city had a duty to maintain the roof, exterior walls, heating and air and so forth. Water would not have infiltrated this building and caused the uninhabitable condition that it was in. Um, have those repairs been made? This is not just a housekeeping situation. You know, I know the lease says that the tenants have a duty to keep it in a sanitary condition housekeeping. But here we're arguing it's well beyond housekeeping. This is the least uses the term, but says Messi shall be responsible for cleaning and custodial housekeeping. What's custodial housekeeping? Just ordinary. And the definition of housekeeping is to do things that are regularly done to keep something working in good order. Okay, that is housekeeping, keeping at home, maintaining your living quarters. Basically, you know, due to do not be a slob. Basically, is it your argument basically that this mold situation goes beyond cleaning and custodial housekeeping? Absolutely. The condition of the property that was in it absolutely does. And we had our expert come in and find the various levels of severe mold, toxic mold that was in the building. This was before it was condemned. And once again, is that in the record? The experts report or I don't believe it was in any of the motions that were filed. It may have been in one. Um, so under section nine, I think if they have the landlord, the city contracted to repair this property falls within one of the exceptions and because they contracted to repair, they should be liable for the consequence of any damages for not repairing the property. There's 20 case law that states if you contract to repair, you're liable for the example, if the ceiling fell in, the roof was repaired or it was defective and it fell in. Are they only liable for repairing the roof? Are they also liable for repairing, repairing the damage that caused to the floor, ceiling, water infiltration? You know, it's the consequence of their failure to repair that caused the mold in this building. Uh, section nine also states that the tenant, the E. M. T. S. Through Mass alterations or improvements, it would have taken major alterations to repair this building, obviously because they just condemned it because it was beyond repair. Um, so not only can the tenant not make major alterations to the building, um, they can't do anything to subject it to a mechanic's lien. Um, in order to get this place up to code, certainly we're gonna have to hire somebody and this is all done through the city. They could get permission through the city, perhaps. Um, but they can't do anything. No major alterations. They can't do anything to have a mechanic's lien asserted against the property. The city is contracted to make various repairs. Section seven also says that Massac, the tenant, is not liable for any damage caused by wind, fire, rain. Rain is one of those things that the tenant is not liable to repair. It is the city that was liable to repair. I think the defendant tries to narrow its contractual duty by saying we have the right to repair, but what we don't have, what we're not liable for are any consequences by our failure to repair. They have a duty to repair. They should have the liability for the consequences of not repairing. And one thing I wanted to address is the rationale of this exception. The only exception to the general rule of no liability on the landlord is the contract. If the contract to do so, that's the only section we're focusing on. In case law shows that there's three rationales for that rule. One is the landlord, by agreeing to repair, reserves the privilege of entry and supervision of the property to make sure it's sanitary. Now, this rationale kind of implies that if the landlord contracts to repair, then of course they have the right of entry. But this specifically states this landlord has a right to enter the property and make sure it is in sanitary condition. The second rationale is that the landlord, by its promise to repair, induces the tenant to forego repairs. And, you know, the EMTs did the housekeeping, everything they could to keep this mold out of the building. Um, just just so the record is clear, Justice Stewart asked you about the record and whether you had in the record the issues about problems with water infiltration that you previously described. And it does seem that in your complaint that you do have that, um, you have the allegations of extensive damage caused by the flood of 2011. You have the mold and mildew due to water infiltration. Um, you had the spraying over the vents. So it does seem to me that there was there's a living quarters, bathroom. You do have a lot of allegations in there. And every hearing that we have, I just kept putting more and more factual information in the complaint to show what the duty, the difference in the duty was. It's not just housekeeping. It's a failure to repair what they promised to repair. So well, it's not just repair, but under Section nine that you've been talking about, it says, Lester shall, at its expense, maintain the building roof, exterior walls, heating and air conditioning system, electrical system and plumbing in good condition. Yes. So you're saying by contract they accepted themselves out of the duty exception? Yes. And it really comes down to an interpretation of the lease. Um, and I think to deny that the city of the duty to the occupants of this building to say, I'm not liable for any consequence resulting from our failure to repair and maintain these structures, I think it directly defeats the rationale for this exception specifically. Um, and I think undertaking this duty creates an additional relationship between landlord and tenant. It's not just a simple place that says, you know, here you, you're not have control possession of the property. They specifically said we're going to take the duty to repair these and maintain this property in such way. So Plankett is asking that this court reverse the court's order dismissing its third amendment complaint. Thank you. I can't read your name. Okay. Thank you. George. Mr. George. Is it d o e r g? Yeah, it's a German name. I think it was bastardized long ago. It should probably should be something like Durga, but it's George, like George. Okay. And I'm with Jellic, Georgia, Phelps and Harrisburg, and I do represent the city of Metropolis. Then I'm sure Justice Stewart probably knows exactly how to pronounce your name. If I apologize. That's okay. Uh, you know, the issue here is duty. And what? This is a lease. It's intervention between two governmental entities in Massachusetts. Uh, this lease was signed. It's June 30, 2011 in the complaint. Ironically, it's alleged there was a flood three months before July 2011 that is supposedly caused this, but conspicuously absent from any reference of the lease is anything regarding any problems with flood or damage or remediation or anything. It's totally silent regarding anything that occurred two or three months before this lease was signed. Uh, first point is on the duty issue is, and we without going into remediation, let me ask you a question. Just ask you a question like that, Mr. George. I mean, we don't have depositions or anything like that. At And so is there anything in the record that would reflect one way or the other, whether or not this mold developed gradually over a period of months after the flood? Is there anything in the record that reflects whether it was already there at the lease was at the time the lease was signed? Well, I don't know either way. Actually, I think the lease was signed June 30th and she claims I think an injury in July. Yeah. Okay. I see. In other words, it started immediately or whatever. But there's nothing that shows one way or another whether any of the people involved in the execution of the lease knew or didn't know that there was any mold when the lease was so that there was any damage. Right. Okay. That's the way I understand. Right. Right. My arm is that there have been such damage flood and they're renewing the lease after this flood occurs. That would have been something addressed. It wasn't in the silence. It's important, I think, because the general duty is generalized, and the tenant is the one that's responsible for general repairs there. In this case, it is correct that the less or assume the duty to be responsible for the roof exterior walls, not interior walls, just exterior walls, air conditioning, plumbing, those structural type things, which is pretty common. The problem I'm having, though, is that mold. Obviously, this is the heat of the summer. Now we've got a flood and mold takes a little while to develop. Well, then you got to disseminate it with an air conditioning system. It's gonna blow through the fence. That's the only way it would possibly be inhaled, as they've alleged. Well, mold in all respects, mold and mildew fungus is a naturally occurring phenomenon that's outside. It is a naturally occurring phenomenon. I happen to have a vineyard, and living in southern Illinois, that's a big problem is mold, fungus as far as taking care of a vineyard. Well, vineyard's not an enclosed space. No, it's not, but what I'm saying is there's mold, fungus everywhere. It's a naturally occurring phenomenon. I understand, and so if you have the obligation by contract to maintain the air conditioning system, and the electrical system, and the ventilation system, wouldn't you also have the obligation to clean it? No. No. A cleaning is a responsibility of the lessee. Housecleaning is, but what's the difference between housecleaning and maintenance of those systems? Well, I think that they said that it would keep them in good repair, which means if the air conditioner's not running, you go in there and you fix the air conditioner. If the roof falls in, you go in and fix the roof. I think the language of the lease is different than what you represent. Let me look, Phil. I think it says, you shall maintain the building roof in good condition. In good condition. So does that mean cleaning the vents and cleaning the ducts and air conditioning? No, I don't think it means that. I think the cleaning is a responsibility of the lessee. So it's okay to blow it around? Pardon? It would be okay under the terms of the lease for you to blow it around? No, I think it's a responsibility of the lessee to do that. Because one, because first, the lease is silent as to who has the duty to clean and unspecified means that it's the tenants under the general law. The fact that we're entering into a discourse about housecleaning versus maintenance versus whatever, would you agree that raises a question of fact? No, I think the duty is always a question of law. The duty, but I'm talking about whether or not you contracted out of the duty. You're right. The duty is the duty. There's no doubt about that. Now, the question here before us is whether this contract was an exception to that duty. And that's my point is I don't think the lease creates a duty. So you don't think there's any ambiguity in this contract? No, and even if there wasn't ambiguity, I don't know that that goes against the lessor. But there's no evidence, no suggestion that the lessor, in fact, you know, as long as she wants to file a record, the same attorney who represented the city of Charlottesville represented the hospital. So there's no against the landlord kind of construing any ambiguity. The fact that it does not specify whose responsibility is leads to the conclusion that it's the tenant's responsibility under the general rules. And I think it goes along with the housekeeping and custodial responsibilities to clean and read. And I also think that if you were to take this to the conclusion that if the landlord assumes any responsibility for any of those items, which they don't commonly do, and you say that as a result of that, you have to make sure you have to clean up water that spills on the floor or you have to clean up mold or mildew, that is opening up Pandora's box, especially in the environment we live in, which is filled with mold and mildew and fungus in the human climate that we live in in southern Illinois. It's a lot more than that. I'm not so sure that you can make those allegations without having raised that kind of thing in the record that you're talking about now. I think if you're talking about interpreting a contract that does not specify a duty that goes to the landlord in specificity, specifically say so, then I think that, you know, that is an appropriate thing to consider, whether you're going to imply a duty that's not stated. Because that is the general law, is that if you're basing it upon the contract, you're not going to expand beyond what the contract says. And I say, I would say that that's what you would be doing if you were to interpret the landlord as being the one responsible for mold and remediation or cleanup of mold. Well, there's nothing in the contract that talks about cleanup of mold, is there? Exactly. That's my point. And so, that's why I wonder if it's not an ambiguity in this contract, or at least a question of fact in the contract as to where the mold came from, how it was disseminated, those kinds of things. Because you do have the landlord taking responsibility for certain things, the roof, the air conditioning, the whatever, which seems to be the only way you would disseminate mold. Now, if there was standing mold, I don't know. I mean, I only know what I can read in the complaint. And that brings me to a second point, sir. 619.1 says that if you're going to file a combined motion, you should set out individually, under each section, what you are relying on. If it's a 615, you set that out. If it's a 619, you set that out. That wasn't done in this case. So, now we have a very confusing order, at least in my mind, as to how the judge ruled. Is he saying that, as Justice Stewart said, you can't find the duty, so it's a 615? We're left kind of in a quandary because the lawyers in the Southern District don't seem to, or the Fifth District, don't seem to be following the rules on setting this out. So, can you tell me what you were trying to add to this dismissal order? That there was no duty of the landlord. So, a 619 is the court. Well, however you want. It matters. It makes a big difference. I played it in the old term, Your Honor. And you're saying I can't. You can. And the court ruled that there was no duty. That's the issue, I think.  You know, if the court disagrees, says there's a duty of the landlord to do this, then that's one thing. But Judge Waveson saw these pleadings over and over again, and at no time did they bring facts within that would create a duty according to the court. And I apologize if I... No, I just think you ought to look at the rule. Pardon? I think you should look at the rule because it allows you to plead at the alternative, but it asks you to state for us and the court up and below which way you're going. That's all. So, your allegations all along have been no duty. Right. That's been the argument all along. It does not under the contract create a duty, and the court kept giving the plaintiff chances to him. And at some point, you've got to say, okay, you can't, you just can't state a cause of act because there's no duty. And that's the basic issue. And that's, you know, you can't keep on adding an item. Just keep on amending, amending, amending, amending. So at some point, you've got to get before you to make a decision. And I get back to the point that absent the contract specifying that the duty of the lessor was to clean and remediate mold, which is a big duty. And the mere fact that this contract was entered into after this alleged flood, and she's supposedly injured within that month of when the lease was entered into. If the parties had intended to create such duty, then I think they would have done so. Can I restate what I think your argument is, and you tell me if I'm getting this right? Yes. The general rule of law is that once the landlord turns the property over to the tenant, the tenant assumes all these duties. An exception to that rule is if in the contract, the lessor assumes certain duties. So the lessor's duty is only, the lessor only has a duty to the extent that that duty is set forth in the contract. Yes. Okay. And what you're saying is here the contract says maintain certain things in good condition. And in the absence of it specifically saying remediation of mold, the landlord has not assumed that duty. And therefore, that falls under the general rule that it's the tenant's responsibility. Is that? Yes. That is my argument. But going further, even if you were against the contraction provisions, I think that the cleaning custodian care rests with the responsibility of the lessee, which supports the further argument. Well, that's why I'm asking that, because under that argument, basically the landlord has no duty unless the landlord assumes a duty in the contract. Right. So you really don't even have to look at what the tenant's duties are. That's right. You don't have to say that cleaning and housekeeping includes mold because it doesn't matter if the landlord hasn't assumed that duty, then the general rule is it's the tenant's problem. Correct. Okay. That's what I'm trying to make sure of that. And just to make, and I don't think this is so much critical of the point you're making, but the duty is defined by the contract. And the general rule is unless it specifies that duty, then there is no such duty. And it should not be read beyond that. You can't read into duties that aren't there. So just to take that one step further, basically what Judge Williamson said, I think, what the trial court said is having an obligation to maintain the roof, air conditioning, et cetera, in good condition does not create a duty to remediate the mold as a matter of law. Right. So in order to reverse him, we would have to say it does. Right. I think that's really what this boils down to. Do we have to say that or do we have to say that there's an ambiguity? I mean, if there's an ambiguity, I don't think we have to rule as a matter of law that the contract creates a duty one way or the other. What do you think about that? Well, I think the question of duty is a question of law. And that the fact that it may be ambiguous merely supports the general rule that it's the responsibility of the tenant. If it doesn't clearly express, if it doesn't clearly place the responsibility to do a specific act on the landlord, then it's the duty of the tenant. By default. Yes. Okay, so you don't believe that, we all agree that the duty is on the tenant unless otherwise contracted for. That's black letter law. My question to you though is, Justice Stewart asked you whether for us to reverse, we have to find that the duty was clearly in the contract as an exemption. Do you agree with that? Or could we find to reverse that there was a question of fact because of an ambiguity as to whether or not this contract created an exemption? I don't agree with that position. Okay, why not? And the reason is I don't, I think that ambiguities go to contractual interpretations, which is still a question of law. If there was some kind of presumption or inference that's made based upon ambiguity, you can't rely on a jury to decide an ambiguity of contract. Well, there's a case in the Fifth District, believe it or not, that says you can't. Well, I mean, duty is a question of law. So the jury, I mean, there is either a duty or there's not a duty. If there's no duty, you never get to the jury. If there is a duty, then the jury determines whether or not the duty was breached. Right. That's what I'm trying to say. That's what you're saying, right? Yes. And I, when the argument's made that getting to those lease provisions, there's, the responsibility for the interior walls is clearly on the part of the lessee because they were going to sue the exterior walls. They didn't say anything about the interior walls. They can remove any walls they want unless they're law bearing. Well, the air conditioning's a little trickier, though, isn't it? Because if, let's say that, you know, evidence was that there was mold and the air conditioning was spreading it throughout the whole place. And then the issue is, did they, if their obligation was to maintain the air conditioning system in good condition, is it in good condition if it's spreading mold? I mean, is it in good condition if it's spreading mold? I mean, I don't know what the facts are going to be. All I know is what's out there. I think that, though, if you're looking at that provision, it's talking about structural elements. Is the air conditioning working? Is the roof structurally sound? Is the exterior walls structurally sound? That requires an interpretation, though, beyond what it actually says, right? I mean, you know, we'll get back to the ambiguity thing. Well, and you get back to the fact that it's silent and the fact that this was right after the flood occurred. So I suppose if duty depends on the interpretation of the contract, and if the contract is ambiguous, the court could take evidence to determine the intent of the parties in the contract to determine whether there was a duty. In other words, it doesn't go to the jury. But, you know, it's kind of an unusual thing where duty is determined under a contract. And I guess I asked a question. What do you think about that? What is that a question? What do you think about that? Yeah, there you go. I should say at the end. Well, I think that if the lease creates a duty, then the court can find that it creates a duty. If the lease is silent, then it's the tenant's responsibility. That's getting back to where I was restating your argument. If it doesn't clearly do it, then it falls under the general rule. That's your argument. Can you distinguish for me, then, this case of Depkunas v. Cagle, which is a 5th District case wherein we basically adopted the restatement? And the fourth exception to the general rule is where the landlord promises the tenant to repair the premises at the time of the leasing, which has then been expanded to adopt the restatement of torts second. And it talks about the contract having a covenant in the lease to keep the land in repair. The disrepair creates an unreasonable risk, and the lesser fails to exercise reasonable care to perform this contract. And this is where I'm getting to the maintenance of, like, the air conditioning, for example, which Justice Stewart just asked about. Why doesn't this case apply to your circumstance? Well, Depkunas dealt with back stairwells to an apartment. And I believe they went exclusively to that apartment. So it wasn't an area, it wasn't a common area or whatever. But it was a repair and maintain, right? Pardon? It was a repair. Right. And it said it was the responsibility of the tenant. And what I'm saying is that abstaining contract language, the tenant is responsible for this situation. I totally agree. And so it does not specify that the landlord is responsible. Therefore, the general duty of repair of all other things is with the tenant. I'm not sure that you helped me. I think it goes to this Section 9, this whole maintenance issue. Well, I appreciate you, Mr. George, trying to help me. Any more? Thank you. Thank you. Do you have some rebuttal? No, I was not making any issues. I'm going to get to the next question. Thank you. Okay, this matter will be taken under advisement and we'll issue an order in due course. Thank you both for your patience with me especially. Thank you. Thank you.